IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FORT SMITH DIVISION

BILLY JOE JONES                                                       PLAINTIFF

V.                 Civil No. 2:25-cv-02011-TLB-MEF

FRANK BISIGNANO, Commissioner,[1]
Social Security Administration                                  DEFENDANT

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Plaintiff, Billy Jones, brings this action under 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of Social Security Administration (the "Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. *See* 42 U.S.C. § 405(g).

**I.    Procedural Background**

Plaintiff protectively filed his applications for DIB and SSI on January 12, 2022, and September 27, 2022, alleging an amended onset date[2] of November 18, 2020, due to back problems; arm, shoulder, and knee pain; bilateral carpal tunnel syndrome ("CTS"); anxiety; and cardiac arrhythmias. (ECF No. 8, pp. 200, 286-302, 320, 328-330, 356-359). An administrative hearing was held before Administrative Law Judge ("ALJ") Elisabeth McGee on October 24, 2023. Plaintiff was present and represented by counsel, Laura McKinnon.

---

[1] Frank Bisignano was sworn in to serve as Commissioner of the Social Security Administration on May 7, 2025, and in his official capacity is substituted as defendant. *See* Fed. R. Civ. P. 25(d).
[2] Plaintiff amended his alleged onset date at the administrative hearing. (ECF No. 8, pp. 7-8). In so doing, he was aware he would be ineligible for DIB. (*Id.*).

On his amended onset date, the Plaintiff was 50 years old. (ECF No. 8, p. 136). He possessed an eighth-grade education and past relevant work experience as an auto mechanic and painter. (*Id*. at 136, 321, 331-339).

On December 19, 2023, ALJ McGee determined that the Plaintiff met the insured status requirements through June 30, 2017. (ECF No. 8, p. 124). She then identified moderate carpal tunnel syndrome ("CTS") on the left and mild degenerative disk disease ("DDD") of the cervical spine with mild facet arthropathy and minimal disk bulge as severe impairments but concluded the Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id*. at 124-126). Despite Plaintiff's impairments, ALJ McGee found he retained the residual functional capacity ("RFC") to perform light work that does not require the use of ladders or heights; occasional posturals and exposure to stairs, and no concentrated exposure to vibration. (*Id*. at 126). Further, she concluded that the Plaintiff can frequently handle/finger with the left upper extremity. With the assistance of a vocational expert ("VE"), ALJ McGee determined Plaintiff could perform work as a public area attendant, counter clerk, and chaperone. (*Id*. at 137).

The Appeals Council denied Plaintiff's request for review on December 11, 2024. (ECF No. 8, pp. 6-12). Plaintiff subsequently filed this action on February 10, 2025. (ECF No. 2). Both parties have filed appeal briefs (ECF Nos. 10, 14), and the matter is ready for Report and Recommendation.

## II.     Applicable Law

This Court's role is to determine whether substantial evidence supports the Commissioner's findings. *Vossen v. Astrue*, 612 F.3d 1011, 1015 (8th Cir. 2010). Substantial evidence is less than a preponderance but enough that a reasonable mind would find it adequate to

support the Commissioner's decision. *Biestek v. Berryhill*, 139 S.Ct. 1148, 1154 (2019). We must affirm the ALJ's decision if the record contains substantial evidence to support it. *Blackburn v. Colvin*, 761 F.3d 853, 858 (8th Cir. 2014). If there is substantial evidence in the record to support the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, we must affirm the ALJ's decision. *Id*.

A claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir. 2001); *see also* 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy

given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The fact finder will only consider Plaintiff's age, education, and work experience in the light of his residual functional capacity if the final stage of the analysis is reached. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v).

### III.   Discussion

Plaintiff raises three issues in this appeal: (1) whether the ALJ fully and fairly developed the record; (2) whether the ALJ's step two determination is supported by the record; and (3) whether the ALJ's RFC determination is supported by substantial evidence. Following a thorough review of the record, the undersigned agrees that the Commissioner's decision to deny benefits in this case is not supported by substantial evidence as the RFC assessment fails to accurately reflect all the Plaintiff's limitations.

RFC is the most a person can do despite their limitations. 20 C.F.R. § 404.1545. Although the RFC must be supported by some medical evidence that addresses the claimant's ability to function in the workplace, it is an administrative determination left to the ALJ. *Montgomery v. O'Malley*, 122 F.4th 1059, 1064 (8th Cir. 2024) (holding RFC is ultimately an administrative determination reserved to the SSA) (citations omitted); *see also Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012) (holding RFC must be supported by some medical evidence). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations," including symptoms such as pain. *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010); *Davidson v. Astrue*, 578 F.3d 838, 844 (8th Cir. 2009).

The administrative record in this case contains medical evidence dating back to at least 2016, chronicling impairments to include DDD in the lumbar and cervical spine and bilateral CTS.

(ECF No. 8, pp. 548-552, 557-558, 565-567, 597-601, 612-613, 616-620, 639-640, 642-644, 796-798, 816-822, 894-897). On February 19, 2019, Dr. James Kelly performed endoscopic carpal tunnel release, fascial release, cubital tunnel release, and tendon lengthening on the right upper extremity. (*Id*. at 592-593, 614-615, 629-630, 641). Despite surgery, however, the Plaintiff continued to experience pain, numbness, and decreased grip strength in the right upper extremity. (*Id*. at 746-759, 779-786, 981-995, 1053-1061). Repeat nerve conduction studies in September 2020 showed bilateral sensory neuropathy, bilateral CTS with some changes possibly related to his recent surgery, and mild left ulnar neuropathy with mild sensorimotor changes. (*Id*. at 739-740, 771-772, 875-881, 955-970, 1046-1052). Plaintiff's primary care provider, nurse practitioner Theresa Fontaine, treated him for continued bilateral upper extremity pain, prescribing medications to include Gabapentin, Celebrex, and Lyrica. (*Id*. at 717-729, 1012-1028).

In November 2021, the Plaintiff reported numbness and difficulty moving his left thumb and a history of right index trigger finger that was getting worse. (ECF No. 8, pp. 836-839, 861-862, 1033-1037, 1076-1077). He had stopped taking the Lyrica and Celebrex because they were ineffective. The Plaintiff was hesitant to undergo carpal tunnel release surgery on his left upper extremity because he felt surgery on his right arm was not helpful. (*Id*. at 928-931, 1038-1041).

In February 2023, advanced practice nurse, Emory Klindworth, conducted a consultative exam documenting weakness in both upper extremities (3/5) and lower extremities (4/5), decreased sensation in his hands and fingers, and decreased grip strength in his hands (75/100). (ECF No. 8, pp. 1081-1091). He was unable to walk on his heel and toes or to squat and rise from a squatting position. Nurse Klindworth opined he had moderate to severe limitations carrying, lifting, and bending and mild to moderate limitations walking, standing, handling, and fingering.

5

Plaintiff consulted with Dr. Jeffrey Johnson at Ozark Orthopedics in May 2023. (ECF No. 8, pp. 1230-1234). He reported wrist pain, occasional burning and tingling, and difficulty manipulating objects with his right hand, a hot sensation in his left arm with constant numbness and burning in his left hand, and occasional numbness in his feet. Repeat nerve conduction studies of his left upper extremity showed electrodiagnostic evidence of moderate left sensorimotor demyelinating CTS. (*Id*. at 1227-1229, 1237-1239). Further, an MRI of his cervical spine showed mild dextroscoliosis centered at the C4 level with minimal desiccation; minimal disc bulge at the C3-4 levels with mild left neural foraminal stenosis; mild facet arthropathy at the C4-5 level without stenosis; and minimal disc bulge at the C5-6 level with mild facet arthropathy and mild right neural foraminal stenosis. (*Id*. at 1236). As such, Dr. Johnson prescribed a cock-up splint for the left wrist to be worn at night and a cervical epidural steroid injection ("CESI"). (*Id*. at 1184, 1215-1224).

Pain and paresthesia in the Plaintiff's upper limbs persisted and he reported no improvement with the CESI, prompting Nurse Fontaine to prescribe Tramadol in September. (*Id*. at 1118-1164, 1211-1214, 1235). Plaintiff indicated he could not tie his shoes or comb his hair due to pain; felt like his arms were going to explode, experienced crushing elbow pain when straightening out his arms, and had to use both hands to lift a gallon of milk or a jug of tea. (*Id*. at 1150-1164, 1207-1210).

An MRI of Plaintiff's elbows dated June 12, 2024, noted extensor tendinopathy with a high-grade partial tear, high grade tear of the common flexor tendon, and small joint effusion on the left and common extensor tendinopathy with a small partial thickness tear on the right. (ECF No. 8, pp. 111-113). Dr. Johnson interpreted this as showing very early right-sided lateral epicondylitis and more substantial lateral epicondylitis on the left with some tearing of the

6

common extensor tendon.  (*Id*. at 76-79).  Bilateral nerve conduction studies also documented moderately severe left CTS worsening since 2018 and mild right median neuropathy.  (*Id*. at 106-110).  An exam in August also documented tenderness in the bilateral lateral epicondyles, pain in the left wrist with resistance, and left elbow pain with resisted supination.  Due to the mild MRI and NCV results on the right in comparison to the Plaintiff's symptoms, Dr. Johnson concluded that his right-sided symptoms were also related to his neck.  (*Id*. at 72-75).  And, on August 20, he performed left carpal tunnel release with left elbow epicondylar debridement.  (*Id*. at 91-95, 114).

In early September, Plaintiff reported worsening lumbar pain with radiculopathy.  (ECF No. 8, pp. 25-31).  Pain specialist, Dr. Brian Goodman, diagnosed lumbar radicular pain caused by image-based findings and producing central spinal stenosis, foraminal stenosis, or post laminectomy syndrome, resulting in a significant impact on quality of life and/or function, lasting at least four weeks or greater.  (ECF No. 8, pp. 25-31).  For this, he administered a LESI at the right L4-5 level midline.  (*Id*. at 13-24).

During Plaintiff's first post-surgical follow-up, Dr. Johnson noted dense numbness in the entire left hand, including his fingertips.  (ECF No. 8, pp. 68-71).  He advised Plaintiff to avoid heavy lifting and the forceful use of his left elbow for one month.  Unfortunately, there was no improvement in the sensation in his left hand the following month.  (*Id*. at 64-67).  Plaintiff continued to exhibit dense numbness in all the fingers of his left hand and indicated that his neck and arm impairments were impacting his ability to drive.  Dr. Johnson advised him to avoid heavy impact activities for another six weeks and directed him to reach out if he wished to pursue a similar tennis elbow surgery on his right arm.  (*Id*.).

Ignoring the evidence of continued symptomology in the right hand and lingering numbness in the left upper extremity post-surgical correction, as well as exams documenting

7

decreased grip strength and difficulty manipulating objects, the ALJ relied on the RFC assessment of the agency physicians who concluded the Plaintiff could perform light work with no concentrated exposure to vibration or hazards; occasional climbing of ladders/ropes/scaffolds, stooping, kneeling, and crawling; and frequent climbing ramps/stairs, balancing, and handling/fingering with the left upper extremity. (ECF No. 8, pp. 126, 186-187, 194-195, 206-207). ALJ McGee dismissed Nurse Klindworth's assessment of mild to moderate limitations manipulating objects and moderate to severe limitations lifting and carrying objects claiming it was partially based on Plaintiff's subjective complaints and not supported by the overall record. (*Id*. at 134). The ALJ did not, however, explain how the record contradicted Nurse Klindworth's opinion, nor did she identify evidence to substantiate the opinions of the agency physicians. Further, without reaching out to Plaintiff's treating physicians, ALJ McGee used the absence of an RFC assessment from any of them to support her decision.

Because the overall record indicates that the Plaintiff continued to experience symptomology in his right upper extremity status post carpal tunnel release, as well as numbness in his left upper extremity following surgery, we cannot say that substantial evidence supports the ALJ's conclusion that the Plaintiff has no limitations in his right upper extremity and can frequently handle/finger with the left upper extremity. Accordingly, a remand is necessary to allow the ALJ to reconsider Plaintiff's RFC.

On remand, the ALJ should reach out to Nurse Klindworth to obtain a full RFC assessment, rather than an opinion cloaked in language such as mild to moderate limitations, and request RFC assessments from Plaintiff's treating physicians to aid her assessing the Plaintiff's true work-related restrictions. *Sisto v. Kijakazi*, 2023 WL 7933513, *2 (W.D. Ark. Sept. 25, 2023) ("An

ALJ— though well versed in disability law and familiar with reviewing medical records—is not a medical doctor.").

## IV. Conclusion

Based on the foregoing, it is RECOMMENDED that the Commissioner's decision be reversed, and the case remanded back to the Commissioner for further consideration pursuant to sentence four of 42 U.S.C. § 405(g).

**The parties have fourteen (14) days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. We remind the parties that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of January 2026.

/s/ *Mark E. Ford*
HON. MARK E. FORD
UNITED STATES MAGISTRATE JUDGE